**IN THE SUPERIOR COURT OF GUAM**

In Re:

INDIVIDUALS OR GROUPS OF
INDIVIDUALS QUARANTINED BY
DPHSS AS A RESULT OF EXECUTIVE
ORDERS AND DPHSS GUIDANCE
MEMORANDA

Superior Court Case No. <u>SP0206-20</u>

**DECISION AND ORDER RE R.S., N.S., L.S., and J.L.**

The Court here addresses the request to be transferred to home isolation filed by R.S., her two minor children, N.S. and L.S., and J.L. The Court heard the request and testimony from R.S. and Chima Mbakwem on February 11, 2021. The Court finds that DPHSS has not provided a safe and hygienic facility for their isolation. Given the unique circumstances of their isolation, the Court GRANTS the request and ORDERS DPHSS to transfer them to home isolation.

## I.  FACTUAL BACKGROUND

Petitioners arrived on Guam on January 28, 2021, and entered the government quarantine facility. They received a COVID-19 test on February 3 and received a positive test result. A family member who traveled and stayed with Petitioners while in quarantine tested negative and transferred to home quarantine pursuant to DPHSS protocols. The remaining family members--the Petitioners here--transferred into the government isolation facility, the Bayview Hotel, involuntarily.

The Bayview Hotel is infested with red ants. Red ants have been present in each of the four hotel rooms DPHSS has placed them during their short stay in isolation. Red ants crawl on their beds; they attack them in the bathroom; and they go near their food. One of the minors is constantly bitten and J.L. has ant bites on her chest. DPHSS informed Petitioners that they could have calamine lotion brought in to calm the bites. DPHSS has also provided them with the direct

ORIGINAL

line of Chima Mbakwem, DPHSS' technical advisor and interim administrator for infectious disease, to address their concerns. Also in response to the widespread ant infestation at the isolation facility, DPHSS has initiated the emergency procurement process to identify a new isolation facility.

While in the past DPHSS may have considered transferring Petitioners to home isolation, DPHSS has changed its policies due to the emergence of COVID-19 variants in London, South Africa, and Brazil. According to DPHSS, under no circumstances can it bear the risk of exposing the local community to a variant. When asked for specifics about why the variant compels a change in policy, DPHSS could not explain how much greater of a risk the variant poses. For example, in testimony received in quarantine cases heard in September and October 2020, the Court received testimony from Dr. Felix Cabrera that COVID-19 has a transmission rate of 1:2.5, that is, one person can infect 2.5 people unless that person takes precautions such as hand washing, social distancing, and mask-wearing. Regarding the new variant, DPHSS offered no exact ratio or scientific information to support the even stricter isolation measures now in place. Its only explanation is that the variant spreads faster than the already present strain of COVID-19 and that it awaits the results of studies measuring how the currently administered vaccines respond to the variant. Also, while DPHSS has sent samples off-island to determine if a variant has reached Guam's shores, at present, it is unknown if any person--including any of the Petitioners--has imported the variant.

Petitioners ask the Court to allow them to isolate at home. J.L. has a three-bedroom, two-bath home with no other occupants. The remaining Petitioners also have a three-bedroom house with at least one bathroom that all the isolated persons can share. They also agree to follow DPHSS' isolation protocols in DPHSS Guidance Memorandum 2020-43, which require, among other items: eating and sleeping separately from non-isolated individuals, wearing masks,

washing hands, and frequent disinfecting. Finally, they contend that family members and friends have pre-stocked their refrigerator and can do "porch drops," which will alleviate any direct contact and any risk of transmission of their COVID-19 infection. DPHSS concedes that there is no risk of transmitting COVID-19 if Petitioners faithfully abide by its isolation protocols.

Finally, Petitioners note that they are asymptomatic. Under DPHSS Guidance Memoranda 2020-43, asymptomatic persons can be released from isolation after ten days. Assuming they remain asymptomatic, Petitioners reach their tenth day on Saturday, February 13, 2021, at 5:00 p.m.

## II.   LAW AND DISCUSSION

Under 10 GCA S 19604(b)(7), "Premises used for isolation and quarantine shall be maintained in a safe and hygienic manner." DPHSS concedes that the Bayview Hotel's ant infestation problem falls below the standard of cleanliness required of an isolation facility. It nonetheless insists that Petitioners remain in the isolation facility rather than isolate at home despite their commitment to abide by the isolation protocols.

DPHSS' primary argument is that it is unknown whether Petitioners have imported the variant and that it cannot take such risks. The risks with respect to Petitioners in particular, however, appear controllable at this point. First, while DPHSS claims that Petitioners may give a false address and thus not be able to be checked on during their one more day of isolation, that is untrue. DPHSS transferred Petitioners' family member to home quarantine on August 5, and so it has had at least seven days to verify their address.

Second, before the existence of a COVID-19 variant, DPHSS permitted individuals that test positive while in government facility quarantine to transfer home in order to isolate. DPHSS argued during the earlier consolidated quarantine hearings that persons who test positive possess a consciousness about their positive COVID-19 diagnosis that causes them to be more cautious

ORIGINAL

about not infecting others. In other words, they are more likely to follow DPHSS isolation protocols carefully. Those in quarantine, however, did not present similar assurances and were mandated to remain in a government quarantine facility for a full fourteen days. While DPHSS again states that it cannot trust any passengers while it assesses the variant situation, the possibility of having the variant would only seem to increase Petitioners' mindfulness in trying not to spread the virus.

Third, the timing of a transfer to home isolation favors Petitioners. Petitioners have been asymptomatic since they entered quarantine fourteen days ago. They are now on their ninth of ten days in isolation. In evidence received in earlier quarantine cases, when a person is infected and asymptomatic, their infectiousness rapidly subsides around days eight and nine. *Ikei v. DPHSS*, SP0138-20 (Ex. XX). Consistent with that timeframe, the CDC recommends the termination of isolation ten days after a positive test result because an asymptomatic person is no longer infectious at day ten. With a transfer to home isolation at day nine, Petitioners are at the tail end of their isolation and have a substantially reduced level of infectiousness that can be controlled if they abide by isolation protocols.

Finally, J.L. has an empty home; the remaining Petitioners have a large enough home to be separated from the one other family member who is also finishing his quarantine at the same time they are finishing isolation. The Court finds their testimony credible that they have prepared their home for the duration of their isolation and will not interact with any other persons during their one additional day in isolation.

For these reasons, the Court grants Petitioners' request. DPHSS has not provided a hygienic and safe isolation facility as mandated under 10 GCA § 19604. The Court understands DPHSS' concerns regarding the possibility of Petitioners carrying the variant, but Petitioners should not be forced to stay in unsanitary conditions and be constantly subject to being bitten by

ORIGINAL

ants while they have homes where they can spend one final day of isolation--a solution which DPHSS found routinely suitable just a few months ago.

Petitioners pose other arguments, including violations of their due process rights, inadequate food, and the lack of transparency.[1] The Court finds those issues need not be addressed at this time as the Petitioners' transfer to home isolation satisfies their request for relief.

## III.    CONCLUSION

The Court grants Petitioners' request for relief and orders that they be transferred to home isolation to complete their ten-day isolation period. Petitioners are ordered to comply with DPHSS' isolation protocols. DPHSS shall transfer Petitioners to home isolation no later than 5 p.m. today, February 12, 2021.

SO ORDERED this 12th day of February 2021.

**HON. ELYZE M. IRIARTE**
**Judge, Superior Court of Guam**

Appearing Attorneys:
Assistant Public Defender Brian P. Eggleston, Public Defender Service Corporation, for R.S., N.S., L.S., and J.L.
Deputy Attorney General James L. Canto, II, and Assistant Attorney General Janice M. Camacho for Respondent Department of Public Health and Social Services

---

[1] DPHSS has refused to provide Petitioners with its internal isolation protocols developed in response to the variants. DPHSS claims that it cannot do so until it finalizes negotiations with the Department of Defense.

